KEARBEY *v.* DOUGLAS.

4-8903                                     221 S. W. 2d 426

Opinion delivered June 13, 1949.

Rehearing denied July 4, 1949.

*R. W. Tucker,* for appellant.

*Chas. F. Cole,* for appellees.

GEORGE ROSE SMITH, J. This appeal is a branch of the case considered in *Mothershead v. Douglas,* also decided today, in which the nature of the proceeding is more fully set forth. In the foreclosure suit below the appellant filed an intervention asserting title to a water pump, a Diesel power unit, a 100-horse-power engine, 1,500 feet of water pipe-line, and several other pieces of equipment. Appellant contends that this property was wrongfully attached to real estate now owned by him and accordingly became a part of the real property. He appeals from the chancellor's refusal to recognize his ownership.

In 1945 appellant bought 225 acres from Peterson and Denison. He later examined the property and found a pipe-line, pump and power unit thereon, which he describes as having been rusty and apparently abandoned. Appellant returned to the land about a year later and observed that additional equipment had been installed. Inquiries revealed that the machinery was owned by Polk Southard Mining Company. After appellant had unsuccessfully attempted to lease to the mining company the property on which the machinery and pipe-line were situated he filed his intervention asserting absolute title to the property.

The mining company and its mortgagees endeavored to prove that appellant's grantors had given an oral license permitting the installation of the equipment. Denison testified that he told a representative of the company that it would be all right to install the machinery and pipe-line, but he admits that Peterson owned the particular tract on which the property is situated. There is some evidence that Denison acted as agent for Peterson in making the sale to appellant, but the record does not support the conclusion that Denison was also Peterson's agent in authorizing the mining company to use the real property. Peterson did not testify, although appellant stated that after the conveyance Peterson said he had not authorized anyone to put anything on the land. Doubtless the chancellor disregarded this hearsay testimony.

It cannot be said that the evidence just summarized supports the view that Peterson gave the mining company permission to use the land. Hence the appellees are in the position of having put their machinery and pipe-line upon another's land without obtaining the owner's consent. If the equipment in fact became part of the real estate the appellant's claim to it must be sustained.

The basic principles observed by the courts in determining whether personal property becomes a fixture by annexation to the land are discussed in *Choate v. Kimball,* 56 Ark. 55, 19 S.W. 108, and Tiffany on Real Prop-

erty (3d Ed.), §§ 606-626. We have held that the intention of the person making the annexation is a consideration of primary importance, *Morgan Utilities, Inc., v. Kansas City Life Ins. Co.,* 183 Ark. 492, 37 S.W. 2d 90; but Tiffany rightly concludes that the courts apply an objective test and arrive at the annexer's intention by looking to his outward acts rather than to the inner workings of his mind. Tiffany, *supra,* § 608. It thus becomes necessary to examine the manifestations of intent that have been regarded as controlling.

One material consideration is the character of the fixture as related to the use to which the land is being put. Tiffany, § 610. In this case the appellees' equipment had no connection with the use of appellant's land. The mining company owned a manganese mine and mill situated at some distance from this land. The pipe-line was laid to supply the mill with water from a bayou in the vicinity, the pumping plant being used to propel the water to the mill. It is not indicated that any mining operations were conducted on appellant's land; it merely lay between the mill and the bayou and had to be crossed to reach the water. Thus this test does not indicate that the chattels became fixtures.

Another consideration of weight is the manner in which the property is attached to the land. Here the pipe-line was not buried in the soil; it was simply laid on the surface. Some of the machinery was of considerable weight, a fly-wheel weighing four tons according to its description in the pleadings, but the testimony is that it could be easily removed without damage to the real estate. One witness testified that at least part of the machinery was bolted to a concrete base and later said that it was "right out there in the open on that rock." Appellant's land is unimproved and of little value except for its cedar timber. The clear preponderance of the evidence indicates that the pipe-line and machinery may be removed without substantial injury to the freehold.

The record leaves us in doubt as to whether the mining company installed its equipment with any idea of

permanency. The pumping plant was twice replaced when it failed to supply the requisite volume of water. It is a fair inference from the record that the property now in controversy was installed with a view to its removal upon the termination of mining operations. We think it unnecessary to review the other aspects of this question. The chancellor found that this particular property is not part of the realty; we think his view is supported by the weight of the evidence. The mining company also built a tool house and a "box house" on the land, but the decree makes no reference to these structures. We assume that the trial court considered them to be fixtures and awarded them to the appellant.

Since the equipment did not become part of the land the remaining question concerns appellees' right to remove it. It has been pointed out that one whose chattels are wrongfully or negligently placed on another's land does not have the privilege of entry to remove them except in an emergency threatening serious injury to the chattels. Rest., Torts, § 200. He should demand the property, and if the owner refuses permission to enter his land there is a conversion for which trover will lie. Waterman on Trespass, § 804. Here the appellant, by asserting title to the property, has in effect refused to permit its removal. Hence the chancellor properly provided in his decree that the appellees might enter the land to retrieve their equipment. This, however, is not a matter of right, and in a somewhat similar situation we have held that the landowner is entitled to nominal damages for the trespass. *Brock v. Smith*, 14 Ark. 431. We accordingly enter judgment in favor of appellant in the sum of $25 and affirm the decree as so modified.